IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MONTRECE BOLDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00603-P |
| | § | |
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant American Airlines, Inc.'s ("American") Rule 12(b)(6) Motion to Dismiss Plaintiff Montrece Bolden's First Amended Complaint (ECF No. 26), Bolden's Response (ECF No. 28), and American's Reply (ECF No. 29). After considering the motion to dismiss, related briefing, and applicable law, the Court finds that the motion to dismiss should be and is hereby **GRANTED** and Plaintiff's First Amended Complaint should be and hereby is **DISMISSED with prejudice**.

## BACKGROUND[1]

**A.   The July 24, 2019 Incident**

On or about July 24, 2019, Bolden—an African-American woman residing in Dallas County, Texas—was booked on American Flight Number 1605 from DFW International

---

[1] The Court draws its factual account from the allegations in Plaintiff's First Amended Complaint (ECF No. 24, "FAC"). *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

Airport to Raleigh/Durham, North Carolina. FAC at ¶¶ 5, 9. She was assigned Boarding Group 5 and seat 7E. *Id.* at ¶ 10.

Bolden alleges that when she approached the jetway to board the plane, an American gate agent told Bolden that the overhead bins were full so Bolden would need to check her carry-on bag. *Id.* at ¶ 12. When Bolden handed over her carry-on bag to the gate agent, she overheard the gate agent tell the couple behind her that they would have to pick up their carry-on bags in Washington, D.C. *Id.* at ¶¶ 13–14. Because Bolden was confused, she asked the gate agent whether the plane was going to Washington, D.C. *Id.* The gate agent replied that the plane was going to Raleigh/Durham, but that the bags would end up in Washington, D.C., and then instructed Bolden to go down the jetway to board the plane. *Id.* at ¶¶ 15–16. When Bolden hesitated to ask the gate agent for clarification as to why her bags were going to a destination different from Raleigh/Durham, the gate agent told Bolden that she was already late and again instructed Bolden to go down the jetway. *Id.* at ¶¶ 17–18. Bolden alleges that the gate agent then threatened to remove Bolden from the flight if she continued to delay the boarding process. *Id.* As Bolden neared the end of the jetway and attempted to ask the baggage handler why her bags were going to Washington, D.C., the gate agent approached Bolden to interrupt the question, and again demanded that she board the plane. *Id.* at ¶ 19. Bolden says she boarded the plane but stopped to ask a flight attendant where the plane was headed, at which point the gate agent allegedly interrupted the conversation by yelling, "I'm so sick of you people. If you would have booked your ticket right instead of trying to beat the system, you would know where you're going! Just for that, you won't fly with American again!" *Id.* at ¶ 20. Bolden was escorted

off the plane, so she asked the baggage handler to return her bag. The gate agent allegedly interfered again, telling the baggage handler to "send that shit to Washington." *Id.* at ¶¶ 21–22. Bolden claims the gate agent then proceeded to berate her, saying "you people are always trying to get over. Not on my watch!" *Id.* at ¶ 23.

Bolden asked to speak with a supervisor upon returning to the boarding area, but the gate agent told her that no supervisor was available, entered something in her computer, shut it down, and walked away. *Id.* at ¶¶ 24–25. Bolden then asked another American employee for a supervisor, who allegedly informed Bolden that the gate agent that walked away was a supervisor. *Id.* at ¶ 26. Bolden says she then returned to the ticketing area and talked to a supervisor named "Rose," who apologized to Bolden for the treatment she had received and told her that the gate agent had no authority to remove Bolden from the flight. *Id.* at ¶ 27. When Rose attempted to book Bolden on a new flight, she discovered that Bolden was blocked in the system and, when she tried to override the block, Rose wound up charging Bolden's credit card nine times, causing a block on the account. *Id.* at ¶¶ 28–29. Bolden states that she was placed on another flight, but it arrived too late in Raleigh to attend the event for which Bolden was travelling. *Id.* Finally, Bolden asserts that her bags did not arrive until late that night. *Id.* at ¶ 30.

**B.      The History of this Lawsuit**

On January 4, 2021, Bolden filed the instant complaint against American in the Dallas Division of the Northern District, asserting claims for discrimination and denial of equal rights under 42 U.S.C. § 1981; discrimination and denial of equal rights under Title II of the Civil Rights Act of 1064; discrimination and denial of equal rights under 42 U.S.C.

3

§ 2000d; negligence; and intentional infliction of emotional distress. ECF No. 1. American filed a filed a motion to dismiss and alternatively to transfer to the Fort Worth Division. ECF No. 9. The then-presiding judge granted the motion to transfer (ECF No. 20), and the case was assigned to the undersigned. ECF No. 21. The undersigned reviewed the motion to dismiss and found it to be meritorious, so Bolden was given an opportunity to file an amended complaint to address (to the extent possible) the deficiencies raised in American's motion. ECF No. 23. Bolden filed her First Amended Complaint, asserting the following three claims: (1) discrimination and denial of equal rights under the law in violation of 42 U.S.C. § 1981; (2) negligence based on the acts of the gate agent; and (3) negligent hiring, retention, and supervision. FAC at ¶¶ 32–52.

American filed the instant Motion to Dismiss (ECF No. 26) and supporting brief (ECF No. 27), Bolden filed a Response (ECF No. 28), and American filed a Reply (ECF No. 29). The Motion to Dismiss is now ripe for review.

## LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure require a party to formulate their pleadings in a manner that is organized and comprehensible." *Boswell v. Honorable Governor of Texas*, 138 F. Supp. 2d 782, 785 (N.D. Tex. 2000) (Mahon, J.). Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(e)(1) provides that although no technical forms of pleadings are required, each claim shall be "simple, concise, and direct." FED. R. CIV. P. 8(e)(2).

If a plaintiff fails to satisfy Rule 8(a), the defendant may move to dismiss the plaintiff's claims under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere allegations." *Boswell*, 138 F. Supp. 2d at 785 (citing *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)). "While a complaint need not outline all the elements of a claim, the complaint must be comprehensible and specific enough to draw the inference that the elements exist." *Id.* (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990); *Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983, 984 (N.D. Tex. 1993)). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts in the complaint as true and views them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). But the Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* at 678. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678–79. "The ultimate question in considering a motion to dismiss is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff." *Boswell*, 138 F. Supp. 2d at 785 (citing *Lowery v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

## ANALYSIS

### A. Bolden's 42 U.S.C. § 1981 claim fails.

Section 1981 provides, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 defines to "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To state a discrimination claim under Section 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (quoting *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)).

"[A] cause of action for racial discrimination in the making and enforcement of contracts, under § 1981, requires the plaintiff to demonstrate intentional discrimination." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997); *Bellows v. Amoco*

6

*Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) ("To prevail under section 1981, the plaintiff must prove a *prima facie* case of intentional discrimination."). "The plaintiff may establish a *prima facie* case [of intentional discrimination] by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive." *Bellows*, 118 F.3d at 274. "The discriminatory intent necessary for a valid § 1981 claim can manifest in disparate impact, departure from procedural norms, a history of discriminatory conduct, or other relevant facts, but may not be established by conclusory allegations of generalized racial bias." *Lee v. Delta Air Lines, Inc.*, 38 F. Supp. 3d 671, 675 (W.D. Pa. 2014); *see also Shin v. American Airlines Grp., Inc.*, No. 17-CV-2234-ARR-JO, 2017 WL 3316129, at *3 (E.D.N.Y. Aug. 3, 2017) ("[B]are allegations [of discrimination] without provid[ing] meaningful specifics do not give rise to an inference of unlawful discrimination.") (cleaned up).

American asserts that Bolden fails to allege facts supporting the discriminatory-intent element. MTD Br. at 7. American notes that discriminatory intent may be demonstrated by circumstantial evidence, but that requires a showing that similarly-situated non-minorities received better treatment—something Bolden has not alleged. *Id.* at 7–8. Bolden responds that the gate agent's statement that she was sick of "you people" followed by allegations that "you people" are trying to "beat the system" and "get over" demonstrate Boden's race was the reason she was removed from the flight. MTD Resp. at 5–6. Bolden then baldly asserts that she was treated differently than the other passengers on the flight because of her race. *Id.*

The Court agrees that Bolden's allegations fail to demonstrate "more than labels and conclusions" that American exhibited discriminatory intent on the basis of Bolden's race.

7

*Twombly*, 550 U.S. at 555.  As American points out, Bolden only states she was treated differently than "the other passengers," and she does not even mention the other passengers' race (or the gate agent's race) in her First Amended Complaint.  *See* FAC.  Nor is there any allegation of a similar non-minority passenger (i.e., one who was confused about baggage or the destination) who was treated more favorably than Bolden.  *See Hall v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653–54 (5th Cir. 2007) (holding the plaintiff "fails to establish a prima facie case for race discrimination" because she made no showing that "similarly situated individuals outside of her protected class were treated more favorably"); *see also Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 136 (S.D.N.Y. 2020) ("Plaintiff cannot maintain his discrimination claim based on an unsupported assertion regarding how similarly situated individuals were treated.").  The Court also notes that numerous courts have held that the phrase "you people" when used in isolation (like here) without greater context does not demonstrate discriminatory intent.  *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269–70 (3d Cir. 2010) (collecting cases); *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 314 (S.D.N.Y. 2000) ("[D]efendants' alleged use of the phrases 'street person,' 'break up the gang' and 'you people' cannot be deemed inherently racially offensive without greater specificity as to the context of their usage").

      While the Court does not doubt that Bolden believes she was discriminated against, "courts are 'not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.'"  *Sherrod v. United Way Worldwide*, No. 4:17-CV-00758-O, 2018 WL 10435225, at *5 (N.D. Tex. Apr. 18, 2018) (O'Connor, J.) (quoting *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)).  Thus, because

there are no non-conclusory allegations that Bolden was singled out or treated differently than any other similarly situated non-minority, Bolden's allegations concerning American's discriminatory intent are insufficient to state a claim. *See Malik v. Cont'l Airlines Inc.*, 305 F. App'x 165, 170 (5th Cir. 2008) (affirming dismissal of Section 1981 claim involving plaintiff's lost luggage because plaintiff "failed to allege any facts establishing a connection between [air carrier's] actions and her racial . . . background" and instead made allegations "rife with speculation" and such "unsupported speculation is insufficient to support a claim for intentional discrimination").

Accordingly, American's Motion to Dismiss Bolden's Section 1981 claim should be and hereby is **GRANTED.**

**B.    Bolden's negligence claim fails.**

To state a claim for negligence, Bolden must plead facts supporting the existence of a legal duty, breach of that duty, and damages proximately resulting from the breach. *Villarreal v. Family Dollar Stores of Tex., LLC*, 2018 WL 735707, at *4 (S.D. Tex. Jan. 8, 2018), *rep. and rec. adopted*, 2018 WL 722637 (S.D. Tex. Feb. 5, 2018). "'Negligence per se is not a separate cause of action independent of a common-law negligence cause of action.' When it applies, negligence per se provides an alternate duty or standard of care— it alters or modifies the applicable duty. But the cause of action remains negligence." *McGruder v. Target Corp.*, No. 4:20-CV-00990-P, 2020 WL 6504570, at *2 (N.D. Tex. Nov. 5, 2020) (Pittman, J.) (quoting *Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. App.—El Paso 2015, no pet.)).

American challenges Bolden's negligence claim on the ground that she fails to plead facts to support a legal duty or that she has suffered any damages proximately caused by a breach. MTD Br. at 10. Bolden responds that her theory of a legal duty arises from 42 U.S.C. § 1981, which creates a duty not to discriminate on the basis of race. MTD Resp. at 6. In reply, American asserts that negligence per se was not pleaded, but even it was, no court has adopted Section 1981 as supporting a common law duty. Reply at 7.

The Court agrees that Bolden has provided no authority to support that Section 1981 creates a legal duty. *See Arguello v. Conoco, Inc.*, CIV.A. No. 3:97-CV-0638H, 1997 WL 446433, at *2 (N.D. Tex. July 21, 1997) (Sanders, J.) ("There is no common law duty not to discriminate."). Nor does Bolden provide any authority to support that the Texas Supreme Court imposes such a duty on American or the gate agent. But even if Bolden successfully demonstrated that American owed her a legal duty, she still failed to address American's argument that she did not allege physical injuries proximately caused by breach of a legal duty. *W. Heritage Ins. Co. v. Estate of Dean*, 55 F. Supp. 2d 646, 650 (E.D. Tex. 1998) (affirming that common carrier's duty is protect passengers against unreasonable risk of physical harm). Thus, Bolden has failed to state a negligence claim.

Accordingly, American's Motion to Dismiss Bolden's negligence claim should be and hereby is **GRANTED.**

C.    **Bolden's negligent hiring, retention, and supervision claim fails.**

"An employer's liability for negligent hiring, supervision, or retention arises if it hires an incompetent or unfit employee whom the employer knows, or reasonably should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to

others." *Cox v. City of Fort Worth*, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010) (McBryde, J.). To state a claim for negligent hiring, retention, and supervision, Bolden must allege "that (1) the employer owed a legal duty to protect [against] the employee's actions and (2) the third party's sustained damages were proximately caused by the employer's breach of that duty." *Estate of Boswell v. Bank of Am. Home Loans*, No. 4:11-CV-588-Y, 2012 WL 13024097, at *5 (N.D. Tex. Apr. 2, 2012) (Means, J.) (quoting *Bedford v. Moore*, 166 S.W.3d 454, 463 (Tex. App.—Fort Worth 2005, no pet.)).

American challenges Bolden's claim for negligent hiring, retention, and supervision as unsupported on the grounds that (1) Bolden simply recites the elements of the claim; (2) Bolden failed to assert an underlying tort claim against the gate agent; (3) Bolden made no factual allegations that American would have had any reason to believe the gate agent would discriminate on the basis of race; and (4) Bolden fails to allege any physical harm. MTD Br. at 11–16. The totality of Bolden's response is three sentences in which she states that she needs to obtain the identity of the gate agent so she can take discovery and then she will amend to allege facts to support this claim. MTD Resp. at 7.

The Court concludes that Bolden has failed to state a claim for negligent hiring, retention, and supervision because her allegations are a simple recitation of the elements. *See Iqbal*, 556 U.S. at 678. Bolden's claim also fails because the Court has already held that she failed to state a claim for an underlying tort. *See Nadeau v. Echostar*, No. EP-12-CV-433-KC, 2013 WL 1715429, at *3 (W.D. Tex. Apr. 19, 2013) ("Plaintiff's claim against Defendants for negligent supervision of their employees must likewise be dismissed, because Plaintiff has failed to identify an actionable, common-law tort that

11

Defendants' employees might have committed."). Finally, Bolden's claim fails because she has not alleged recoverable damages. *See Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App.—Fort Worth 2002, no pet.) ("The duty of the employer extends only to prevent the employee or independent contractor from causing physical harm to a third party.").

Accordingly, American's Motion to Dismiss Bolden's claim for negligent hiring, supervision, and retention should be and hereby is **GRANTED.**

**D.     Dismissal is with prejudice.**

Dismissal without prejudice is appropriate if a federal court finds that the plaintiff has not alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Thus, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Lopez–Santiago v. Coconut Thai Grill,* No. 3:13–CV–4268–D, 2014 WL 840052, at *5 (N.D. Tex. Mar. 4, 2014) (quoting *In re Am. Airlines, Inc., Privacy Litigation*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005)).

Dismissal here is warranted because Bolden has already been given the opportunity to amend and plead her best case. ECF No. 23. Thus, dismissal is not because Bolden has failed to plead her best case, but because she cannot state a claim on her allegations despite having two attempts at doing so. Accordingly, the Court finds that dismissal should be with prejudice.

## CONCLUSION

In light of the foregoing, the Court concludes that the American's motion to dismiss should be and is hereby **GRANTED**, and Bolden's First Amended Complaint is **DISMISSED with prejudice**.

**SO ORDERED** on this **5th day** of **August, 2021**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE